Let's see. Mr. Johnson, you're up first for Mr. Espinal. Whenever you're ready. Good afternoon, and may it please the court. Maximo Espinal was arrested and charged with aggravated assault merely for doing his job as a Commissioned Security Officer. Despite being charged at by an unknown trespassing vehicle, he kept the muzzle of his duty shotgun pointed at the From the safety of his unmarked police vehicle, Apelli Long's life was never in imminent danger, and he felt safe enough to roll down his window to verbally engage with Max after he had charged him with his vehicle. There is no possible construction of these facts in which a reasonable officer could believe that an assault had occurred. Judge Hughes's vague ruling below sets a dangerous precedent that would expose any for assault. That must be corrected for three reasons. First, Apelli Long never faced an imminent threat of bodily harm from Max's actions. Is that really required for an aggravated, what is the charge, aggravated assault? Is it enough to brandish a dangerous weapon? The statutory language is an imminent threat of bodily harm. There have been some state law cases which were not briefed about individuals brandishing private weapons, but none about security guards with duty weapons or police officers. So in this kind of case, let's stipulate that there wasn't probable cause to arrest, but that's not enough to overcome qualified immunity, right? Correct. It would need to be there's no arguable probable cause. But maybe there was a misunderstanding about whether the security guard had the right to be carrying a shotgun, about the way that he brandished it, about his interaction with the police. And so how can you say that beyond being lacking in probable cause, it was so unreasonable as to overcome qualified immunity? I guess that's my concern. Your Honor, I have two responses to that. The first one is just a pushback on the use of the term brandishing. Apelli's used that term a lot. But in the complaint itself, all it says is that he gripped his duty shotgun at the lobe ready and kept the muzzle pointed at the ground. That's not exactly brandishing. Well, okay. Well, all right. With due respect to the brandishing, by some level of movement or some level of something beyond just holding it, is my first response. And my second response to that is even if Apelli Long wasn't aware of the requirements of a commissioned security officer and what weapons they are or are not able to carry, and that first of all, it's not an arrestable offense in and of itself in terms of carrying the wrong duty weapon. But secondly, even if he was wrong on the law, that wouldn't then create probable cause from the perspective of a reasonable police officer. But in addition to that, we can look at the district court's opinion. The reasons that the district court gave for saying that there was arguable probable cause are very vague and don't really apply the facts of the law. All the district court says is that there was aggravated assault, but given the position of Espinosa firearm and the nature of the sides exchange, as we just talked about, the position of the of Espinosa firearm was pointed at the ground. He was holding it according to. Is it disputed or undisputed that at the same time as he's holding the shotgun pointed down, he says leave and don't come back to a police officer? I don't believe that quote was ever in the complaint, so if if that if that quote is is proper at any point, then yes, that's disputed. I thought it was. I thought it was recited in Judge Hughes's opinion. I would need to double check that your honor, but I don't believe that that was ever in the complaint. It was made clear that I agree with you. Judge Hughes doesn't develop Texas law and I'm certainly not familiar with when you can arrest Texans who have guns. I'm not that probably a pretty high level, but there is a totally independent ground, correct? He's saying well qualified immunity because after this happened, the grand jury immunized it and we do have the independent intermediary doctrine and I think your brief said well that's got to happen before the incident, but that isn't our law, right? No, so what's your answer to that independent basis for granting qualified immunity? Right, so two answers to your question. The first is just a clarification of the briefing, which is not that not that the independent intermediary needed to act before before the arrest, because of course the independent intermediary can apply to a grand jury after the fact, but the the point that was made in the brief was merely about he didn't have a warrant beforehand, so the standard of how a police officer should act without a his actions on the scene. And in terms of the the independent intermediary after the fact, we have and we can look at your opinion in Wilson versus Stroman to see that you know grand jury proceedings are secret, so there's only so much that the plaintiff can infer and plaintiff can know. So based on the facts that are pled, we can see that you know it doesn't it doesn't take it doesn't even take a reasonable inference to see that based on these facts if accurately presented. So your argument for reversal on application of the independent intermediary is that in your complaint you allege taint. Is that what you're arguing? Not precisely. I'm saying what what the what the facts in the complaint show is that if these facts are accurately presented to a grand jury that there is that it would be a facially deficient presentation of facts that no grand jury that there's no probable cause that a grand jury could use to submit an indictment. What what I'm asking this court to make though is a reasonable inference that even if you know if there was an indictment that even if the facts weren't accurately presented that it wouldn't necessarily rely on misstatements or omissions by officer law. I don't understand. That in order for the in order. I don't understand. I thought the name that doctrine I thought it required either omission of pertinent facts from what's presented to the intermediary or just sort of falsehoods right don't don't you need that don't you need some sort of taint as judge Higginson said in order to to to show that the intermediary it doesn't doesn't immunize. Right so so the level of taint the it comes from can come from two which is material misstatements or omissions. Yeah. The second is a malleable deficiency which is presenting a facially deficient affidavit of facially deficient evidence. You're saying these facts that are alleged in the complaint that led to his arrest are presented to the grand jury it's so bad that the grand jury couldn't reasonably return an indictment. Right but it's either by excuse me. Wilson B Stroman. I thought you were citing McClin. Um I was. Maybe I'm wrong. I was citing. The context usually for the Malley claim is we've got the affidavit that gets the arrest warrant. Right. That's not these facts. We have the black box which admittedly is a problem in the doctrine but the doctrine is what it is. So I would have thought the MCLIN case Macklin tells a complainant that they've got to allege something and so here's the question for you. What paragraph in the complaint alleges whatever you think it was that misrepresented to the grand jury? What paragraph in the complaint best alleges any misrepresentation? We don't have a paragraph in the complaint that specifically says that long misrepresented something to the speaks to that issue. Right so there are not there's not explicit language about any of Long's representations to the grand jury in large part because they would be inherently speculative. Right but we dealt with that in McLin. Right in McLin they still alleged false affidavits. They still made the allegation that likely so-and-so went in front of the grand jury and misled it. It may seem like a technicality. I agree grand juries are black box are you know much of this doctrine is is open to criticism but it is binding on us. Do you let me put that to a question I often speak and then don't ask question. Would you agree that the taint alleged in the complaint here is significantly less than it is in McLin? I'd argue that it's less. Okay fine that's good okay so it's less. Do you have a case that that stands for the independent intermediary doctrine wouldn't apply based on can you think of a case where this little was alleged? Not specifically but you know if we're going to to dive into the the nitty-gritty of the independent intermediary doctrine beyond what's already been briefed I think that you know an opportunity to find more cases that that that would find where that line is of what needs to be alleged would be required or in the alternative if this court decides that that the intermediate independent intermediary doctrine applies purely because of a pleading deficiency that it's sent back with the stipulation that that it's dismissed without prejudice so that we have a chance to. Just to be clear there's no paragraph right now you would point us to? Correct. Okay if we can go back to qualified immunity for a second yes I think we were talking about prong one but what about prong two what case can you point to assuming we agree with you that there was a a violation on the arrest what case can you point to that clearly established that that was unconstitutional? Right so uh clear establishment as uh the briefing shows in um with respect to uh Joseph versus Bartlett and Cooper versus Brown that the the real thrust of qualified immunity is um whether or not there was a fair warning that what the officer was doing was wrong. Yeah you have to point to a case that's fairly not we have uh Hope versus Petzler which says that you know an obvious violation. Okay well well take that to one side that's always sort of the last resort yeah what it's obvious okay put that to one side can you tell me what's your best case or cases in this situation because this I'll be frank uh this is an unusual situation I haven't seen this particular one. In terms of the specific facts yeah there is not frequently uh these sorts of disagreements between um police officers and I think that um in general you would uh U.S. versus Walden 707 F second 129 uh that's this circuit's case uh and Illinois negates the these sorts of cases that deal with showing that um officers need to take in the totality of the circumstances and make an objective. Well forgive me I mean so typically you don't need you don't need a case that's the exact facts I I accept that but something that is in the ballpark I guess that shows an officer who does this is um we have the and so yeah so where I was going with that so we we have the the the general establishment that that it has you have to look at the whole thing and not just um your perspective and you can't exclude the um ex ex exculpating factors yeah I get all that but then if you go beyond that and look at uh Wilson and look at Mallory. Well tell me which one of that it would have put the officer on notice here um I I believe that the cases themselves that the the fact that that officers are taking uh and Wilson for example are are taking these uh you know making generalities um and taking obviously deficient claims where they they don't have what they need to to make an arrest and just taking them taking them to a grand jury anyway uh I would argue it's actually close close enough in between that in between um the language of the fourth amendment itself I don't think that there's any reason um for officer long to have believed that you know inventing a charge out of thin air just because he has thin skin was allowable under the fourth amendment um I just don't let me ask you a question suppose that that's what happened here is actually the first encounter they uh this was taken to the grand same result um so if I might clarify your honor you're asking if the encounter the first night didn't happen would the result be different um your honor no and uh that actually uh one more time I'm sorry and the graduate taking to the grand jury to grant your own diet right and and yeah and what I'm saying is is that that would not affect the outcome of this case um and and if you look if you if you consider a hypothetical where you know long or the reasonable police officer or any of the the four of us are sitting in a car and observing this you know from afar you know we we see a security officer holding his duty shotgun lighted in a parking lot by the building that he's hired to protect you see him charged by an unmarked unknown trespassing vehicle and all he does is rip his shotgun a little tighter I don't think any of us any reasonable police officer long himself absent the fact that he was in the car would see that and say an aggravated assault occurred there and the security officer was the one that did so so and I think that that answers basically the same question insofar as um even if even if the officer didn't have the experience from the night before where he had spoken to max about you know his duty weapon and uh max had already said you know this is private property I understand that you're a police officer but you can't be here um that that doesn't necessarily change the fact that the facts that he had in front of him that night alone were enough for him to know that there was no probable cause uh for aggravated assault so with that I'll leave the rest of the time for rebuttal thank you Mr. Higginson I can pronounce that name it's spelled differently spelled differently and please the court I'm Robert Higginson I represent the city and the officers you're gonna have to talk up a little certainly I was having trouble hearing over there myself so I think there's an acoustical issue or maybe it's all in my head I don't know but may it please the court I'm Robert Higginson and I represent the city and the officers there are three reasons why this court should affirm uh first there was arguable probable cause second qualified immunity covers reasonable mistakes of law or of fact and third the grand jury indictment uh is the independent intermediary doctrine uh was the officer here just was he and I'm just honest question I haven't looked at it was he mistaken about the kind of weapon that a security officer can um can have in Texas we don't we don't have that information in the record we don't know if he was mistaken but it could be a reasonable mistake if you if you just look at a google search of rifles that look like shotguns will show you that there are rifles that look like shotguns and there are shotguns that look like rifles and so it can be a reasonable mistake for him to believe that uh we don't have the the weapon itself in there and they're seeing it at night and we don't have um it could be a reasonable mistake for him to believe that this is a rifle that would be a reasonable mistake of fact it could be a reasonable mistake of law for him to miss uh miss no miss misunderstand or misremember the statutes that apply to exactly what he is a in there that says that the officer that officer long knew that he was a commissioned officer that's something that came around afterwards and well I suppose that he did have a rifle the whole time what difference would that make according to the statute apparently it makes some difference whether the security a commissioned security guard could handle a rifle as opposed to a shotgun presumably because of the distance of the effect but that's just my assumption um what is the regulation of the rifle what is the law regarding the handling of a rifle that that a commissioned security officer cannot carry a rifle and so if the officer believed and I'm saying it's from I would just wanted the the legal basis for that yes and in fact um Mr. Espinel even pleads an acknowledgement that he is legally prohibited from carrying a rifle and so that would be a theory of the case just so I understand is is long is driving along at midnight he's in plainclothes unmarked yes he sees a uniformed security officer he trespasses yes and then arrests him for aggravated assault of him because he thinks he's got a rifle a couple more steps okay all right so the first encounter no it's the third encounter that's the arrest there's a confrontation on the first encounter there is and so from this if officer that is supposed to be off my body I thought that was I thought you were thought you were reaching for your shotgun what you see it looked like I was you know I'm like it's all right yes and so there's a reasonable mistake of fact uh and um what are the elements of aggravated assault what are the elements yes lovely I I love that you asked that let me let me just actually read them here and I have this in my brief in the section is in pages 13 through uh 20 and I have quoted the first excuse me first of all it's a combination of three sections from the field code assault itself is in field code section 20 refer to page 15 of my brief and there are three possible ways that you could commit an assault well just describe the way that this one this yes the one that's relevant here is intentionally or knowingly threatening another with imminent bodily injury we'll stop there because the rest of it doesn't matter okay all right and so that part and they'll add the other second they aggravated in the public service that gets it to a felony in a second if I may that part about knowing knowingly intentionally I'm sorry about this intentionally or knowingly threatening another with an imminent bodily injury is where this could be a reasonable mistake of fact on officer long's part I'm not conceding that it's a mistake because we don't know if it was a threat but standing with a shotgun at that distance just a few yards away as as espinal bled the shotgun would certainly be able to hit him and they're having an argument and the officer is saying you can't have that and he's saying in effect yes I can and he's holding it at a low ready that's not automatically a I thought he also said that basically to get out of here and absolutely yes and so there is that part of the argument it gets a little little bit heated it doesn't apparently last very long I can show that exactly what he said what the testimony was in the record about he he didn't just ask him to leave he ran him over locally he ran him off and he's holding a gun so well exactly right that's this is how it's played because we're here on a motion to dismiss as opposed to summary judgment there's kind of a limit of what's actually in the record we're just going on what he what he played but these are things that espinal himself acknowledged in his own complaint you know that he told him you know you got to leave get out of here and this is after he knows that he's a police officer and so espinal says well all he has is a badge to show well all right that's enough to put him on look at this from the perspective of espinal as a criminal defendant he can defend against that charge with certain facts we're looking at this from the perspective of the officer what is this man doing who I think is holding a rifle and he's saying it's not and he's telling me to get out of here and there's this appears to be an angry encounter here and and I still think it's a rifle and he's holding it like this and it takes less than a second to get it up and fire officers would not be able to defend themselves now we're not even talking about an officer shooting here but just this is an assault I thought texas law required security officers to display their firearm I believe that's correct but not the not a rifle okay and so if the officer trying to think and this may be wrong there may be a secondary argument but you're asking us to say and tell me if you've got any texas aggravated assault case that stands for other than the statute that in texas police can trespass onto your property if they see you're holding a gun whatever gun it is and then arrest you for aggravated assault and then they say well we thought that was a prohibited gun again if I may that's not quite how it worked because it was three encounters the third one was the arrest the second one repeated they get out of here it's a shotgun he leaves he doesn't arrest him I guess I am focused on the third encounter and it seems even worse than the hypothetical I threw at you all right in that this is a security officer that texas law requires to display the gun so any texas police officer can trespass when they see a security officer who's required to display his gun and arrested him because he's displaying the gun no I don't believe that's the case and that's that's not what I'm arguing at I don't have a texas case that says that you have any texas case remotely close to these facts where there was a conviction affirmed on aggravated assault when the police officer trespasses and the man who has the gun is required to have the gun I do not and Judge Hughes it's very very thin so if we're affirming on that basis coming from the fifth circuit like Judge Hughes's argument about a paragraph citing zero texas law right but that is the ruling you're asking us to say that that at least on the second prong it's not clearly established in texas that you can't do what I just described well that yes that's exactly right okay I think there'll be a lot of startled texans if we say that maybe I'm wrong is this your primary argument or what is your primary argument uh you're asking me yeah the qualified immunity covers the mistake I believe there was arguable arguable probable cause here you can even imagine a possible conversation this is just imagined in in the car driving back to arrest him well what was he doing with the with the gun was it really a threat were you threatening you yes I think he was threatening me does this fit with the law yes it does does it not if this is arguable reasonably arguable it's covered um so your primary argument is the one you've made yes the secondary argument is the the grand jury indictment cuts off the causality and neither well the grand jury doesn't have to be presented with what the plaintiff says it's exculpatory evidence that's something for a later trial jury the pedigree could deal with that you don't do all that in the grand jury proceedings and the bar for uh some uh inclination that there are some some evidence that there is a crime that's just been committed or is it being committed or is about to be committed and uh I thought that the allegation here is simply is assault uh I mean some crime is being committed that's why he was he went back also I thought that the requirement of distinction between rifles and shotguns simple simple fact that not that they that the guard shouldn't be well armed in fact I think the shotgun is frankly more deadly than the the rifle but the rifle is prohibited because of the the content the area in which these are going to be used the carry simply of a rifle versus a shotgun yes to me uh uh straight away I'm not unfamiliar with those weapons a shotgun um if I'm close enough to shoot you it's a lot more deadly than the than a rifle all right so but I'm not sure what do you do with a well uh it struck me that what part was going what's going on here is the is the uh is is the the actual anger that between these two what what what caused that um the um he said there were three encounters can you describe for me briefly why that and how they've escalated and what is it the record show they was the basis for that all we have to go on is the uh the allegations and the complaint and and there uh the complaint alleges that Mr. Espinal's correction to Officer Long that this is a shotgun like like you're that Officer Long may have taken offense at that and gotten upset been embarrassed or something along those lines came back the next night they had the same kind of encounter the second night and then he comes back an hour later with others to arrest him uh and so it appears that from the complaint that Mr. Espinal is relying to some extent on what he believes to be what he speculates or might be the motive of Officer Long but that this court has held and the U.S. Supreme Court has held is irrelevant to the determination of probable cause and so if there is something here that looks like there may be a crime here they can arrest him even if it turns out they're wrong later and I was to to follow up with where I was earlier Judge Higginson and I got a little track he knows he goes back three times so he knows he's a guard and he's not sure somebody said he's not a pretender so he knows then that that man's lawfully possessing a weapon so it has to be that that that he he was persuaded that the fellow was threatening him with a weapon is that is that fair that that is if I understand what you're saying exactly Judge Higginson that is fair there's not a problem with the security officer possessing the weapon even with the requirement that he have it displayed uh the problem here is in what is evidently Judge Officer Long's perception that this low ready position with a shotgun he could raise it I mean that's that's threatening or could reasonably be perceived as a threat even if it was not Mr. Espinal's intention it could reasonably be perceived as a threat in the context of Espinal's response to Officer Long's directive you can't have a rifle and again we go back to yes I agree a shotgun at close range would be more deadly than a rifle and there would be other reasons for disallowing or prohibiting the rifle but to me the the flash point becomes for this purposes is that's when he has the not to do whatever moves he may have made with the gun but that he actually runs him off he tells him get out of here and and he's in and in that sense the officer believes he was forcing his orders to get out of here by burnishing the a shotgun um frankly well I think that's what the well I think that's what the complaint alleges that he was using the shotgun to enforce the order to leave this place you know get out of here that's that's how I read it and if and that can be reasonably perceived as a threat like if you don't I'm ready to make you um talking about this security guard doesn't have that what what's your guess the question what is the authority of a security guard to to order a police officer not to depart I think that if the police officer has a reason to be there it's pretty slim authority uh now let us remember that this is a high crime area the officer knew this the security guard knew this and see Mr. Espinal says that that's why he was carrying the shotgun great this also offers an explanation for the officer's approach onto this private property officers can do that if they see somebody over here and they wonder what's going on straightforward with it it's the it focuses on the reality that we don't know what the was that's inherent in the system so we have to try to get out what the what the range of possibilities are that could support that uh and what what was it what was the presentation of the grand jury uh it's that if you have to if you if from the facts of it one could articulate a reasonable interpretation of it of events that support the officer's viewpoint uh then we under this doctrine we have to say that it's what the grand jury was told uh and like it or not that's what that's what the intermediary doctrine I think teaches I agree with what you're saying Judge Higginbotham and we we don't know what's in there because like you said it's a black box and we have to deal with that um we cannot infer that they were told something untruthful they were likely told something that supports their you know something was officer long's perception of it and it could have been a misunderstanding it could have been just a mistake I don't think that it goes as far as uh officers driving by they see an armed security guard so they can go over and arrest him for assaulting them the assault comes in what Judge Higginbotham was describing as get out of here and he's enforcing that with the display of field code sections that come together uh one was if they're in the brief we have I'm not saying don't I'm sorry if they're in the brief we have them I'm just you do exactly you don't feel like you have to recite the brief okay it's pages 15 and following in my brief and uh one is for assault which includes the the threat that's where the threat comes from that makes it an assault you know no contact is necessary second it's aggravated if the relevant portion of that is use or exhibit a deadly weapon in the commission of the assault and then the third it becomes a first degree felony an assault of the first degree felony if it's against if the actor uh acts against a person the actor knows it's a public servant by that time it continued after the display of the badge after he knew he was talking with an officer he continued doing this and telling him to leave so that's how this is tied together into probable cause or at least arguable probable cause and so there that's one reason yes you keep you you've said that correctly and I tried to bring this up with the other side as well it's not the question is not did he have probable cause we can stipulate that he did not have probable cause the it was so obvious that he lacked and I'm paraphrasing he had to he had to clearly lack probable cause no reasonable basis for the arrest isn't that right that's right there's nothing it doesn't really get that far there is a way that you could be an officer in that situation and think this guy reasonably think this guy is committing an offense but that would be probable cause well wrong about that even if you're wrong yes and so that's where the arguable probable cause so that's what's even a lower a lower threshold you know whether it's actual probable cause which I believe was there or arguable arguable probable cause which is kind of hard to get away from that it's still it doesn't matter if in the end there's there's no probable cause and the grand jury from whatever it was that they heard believed it'd be probable cause furthermore the other thing I just want to mention very quickly is Mr. Espinel makes it a couple of references to this videotape that would have been exculpatory he said and this court has held in LaVange v. Fite which I cited on brief you know that allegedly exculpatory evidence it was a different kind of a case it wasn't an officer well it was an arrest but it wasn't well I guess it's comparable enough LaVange v. Fite it was a officer arrested a man for not well for violating the statutory requirement for reporting on scrap metal purchases and he said I can show you all this other reason that I did that and this court held that that is irrelevant on that may it please the court a couple points on rebuttal the first I'd like to start with Judge Higginbotham's question right at the beginning of a friend at the other table's which is I struggle to understand what it you know let's say Officer Long is making a reasonable mistake that Espinel has a rifle instead of a shotgun that has nothing to do with whether or not Espinel arguably or did or did not commit an aggravated assault why not if I'm brandishing a gun or I'll take it from your complaint he gripped his shotgun tightly at the low ready muzzle still pointing to the ground so I'm gripping the shotgun or rifle and then I say in paragraph 20 Max told Officer Long to leave as this was private property and not to come back to which Officer Long stated that he was a police officer isn't that even if he's wrong about it being a rifle versus a shotgun isn't that a threat communicated to a police officer while exhibiting a weapon um no your honor I do not believe that that's a threat uh to a police officer while exhibiting the weapon um before uh diving into that I just wanted to clarify uh all I'm getting at is is that whether Long thought it was a rifle or a shotgun it doesn't it has nothing to do with with the offense which is which is what you indicated by your question if Long thinks he's holding a rifle if Long thinks he's holding a shotgun that has something to do with probable cause for you know based on the appearance of the weapon that that um that's when I was holding a rifle but that wouldn't affect the probable cause I don't understand that but but but I just okay but but but going back to your your question more directly um I I think that uh Judge Higginson's questions um really get to to the heart of that about you know police officer can can see somebody that you know it's it's dark it's nighttime he's lighted he's prominent he's in his security uniform holding a weapon what why would a police officer then trespass on that property and be able to then arrest for aggravated assault when the person rightfully tells them that that they can't be here what is absent from the complaint I mean look I'm all for private property uh and the fourth amendment but if an officer comes on to my property and I don't think he has a right to be there and I take out a gun and I say hey you need to leave I can do that to the police I I to that I would say I don't believe that you could do that provided that you didn't already have a gun out that you were displaying as part of your job um in this case he is a security officer he already had he already had it out it was already displayed he was already holding it um he didn't pull it out when he was charged with officer along his vehicle um but the other thing that I would note is that okay so you secure in Texas security guards security guards can exhibit weapons and tell the police menacingly threateningly to get off the property that they can tell police to leave the property if if the police have no right to be on the property but um absent from the complaint is any any implication that his words or actions were threatening or even that that his emotions were were angry or or out of hand the complaint indicates that long was becoming angry but not that espinal was reciprocating that anger he he has every right to inform the officer this is to be here there's trespassing trespassing signs I doubt that you can leave I would doubt that that the owner of the property is a viewpoint that they don't want police officers on their property and they hired security guards to protect it to make sin so your argument your suggestion that it doesn't doesn't doesn't make practical realistic sense that that that the owner of the property here would there's not present and so forth that at some other he's trespassing but that I don't think that ultimately takes us anywhere there were fundamental problems with it right and yeah as he kind of indicated you know regardless of the the owner's intent of whether or not the owner would want a police officer on the property or not that that being what it is I think the other thing to consider especially with respect to the fact that you know regardless of long status as a police officer he was police officer or not a trespasser so that goes to espinal's defensive justification I mean he he had every reason to believe that he was being charged with a vehicle that somebody was coming on the property that he was commissioned to protect and he had every right to defend it and because he's holding a weapon doesn't prevent him from being able to perform his duties in that way thank you counsel case is submitted we appreciate it we have one more case for the day okay if we just post